FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y.
★ MAR 08 2012 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
BIREMIS, CORP.,

                Plaintiff,

     -against-

MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED,

                Defendant.

---------------------------------------------------------------x

MEMORANDUM AND ORDER

No. CV-11-4934 (LDW)

(Wexler, J.)

APPEARANCES:

    PLUMMER & PLUMMER, LLP
    BY: W. HUBERT PLUMMER
    Attorneys for Plaintiff
    77 Arkay Drive, Suite H
    Hauppauge, New York 11788

    LEVI LUBARSKY & FEIGENBAUM LLP
    BY: HOWARD B. LEVI &
    RICHARD F. LUBARSKY
    Attorneys for Defendant
    1185 Avenue of the Americas, 17th Floor
    New York, New York

WEXLER, District Judge[1]

Plaintiff, Biremis, Corp., ("Plaintiff" or "Biremis") commenced this action seeking a preliminary and permanent injunction restraining Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated, ("Defendant" or "Merrill Lynch") from prosecuting certain claims against Biremis in an arbitration proceeding before the Financial Industry Regulatory Authority

---

[1] The court acknowledges the assistance of Bret Kaufman, a law student at Touro Law School, who assisted in the research and preparation of this opinion.

1

("FINRA"). Presently before the court is Merrill Lynch's motion to dismiss, pursuant to Rule 12(b)(6); or in the alternative, to stay the action pursuant to the Federal Arbitration Act, 9 U.S.C. §3, based on the pendency of a FINRA arbitration.

## BACKGROUND

I. The Parties and the Agreement

Plaintiff is a Canadian Corporation. Its predecessor corporation, Biremis, LLC., was a Massachusetts corporation registered with the United States Securities and Exchange Commission ("SEC") and FINRA as a broker dealer. On July 14, 2011, Plaintiff's predecessor surrendered its corporate existence in the State of Massachusetts and ceased to do business as a U.S. broker dealer. Defendant is a Delaware corporation and is registered with the SEC as a broker-dealer, and is a member of FINRA.

Plaintiff and Defendant entered into an agreement dated March 16, 2007, pursuant to which Plaintiff agreed to pay for the use of Defendant's Trading System (the "Agreement"). Paragraph 10 of the Agreement (hereinafter the "Forum Selection Clause") provides that the Agreement "shall be governed by and construed in accordance with the laws of the State of New York, whose state and federal courts shall have exclusive jurisdiction over any dispute arising out of or in connection with this Agreement."

II. The FINRA Arbitration and the Present Action

On July 25, 2011, arguing that both parties hereto are members of FINRA, Merrill Lynch commenced a FINRA arbitration proceeding against Plaintiff entitled In re Arbitration Between Merrill Lynch, Pierce, Fenner & Smith Incorporated and Biremis Corporation. The Statement of Claim filed in connection with the FINRA proceeding alleges that Plaintiff owes Defendant more

2

than $1 million in execution charges pursuant to the Agreement. On October 28, 2011, Plaintiff objected to FINRA's jurisdiction to arbitrate the dispute. On December 8, 2011, the Director of FINRA denied Plaintiff's jurisdictional objection and indicated that the arbitration proceeding would go forward.

Prior to the denial of Plaintiff's jurisdictional objection before FINRA, it commenced this action seeking to enjoin Defendant from pursuing its claim against Plaintiff in arbitration. Shortly thereafter, Defendant requested a pre-motion conference with respect to Defendant's proposed motion to dismiss or stay the action on the grounds that Plaintiff agreed to arbitrate the dispute. This motion followed.

III. The Motion

Defendant moves to dismiss this action, or in the alternative, stay this action pending disposition of the FINRA arbitration. In support of the motion, Defendant argues that as members of FINRA, the parties are bound to arbitrate disputes arising out of their business activities. In opposition, Plaintiff argues: (1) that it is not a member of FINRA and thus cannot be bound by its terms and, (2) even if it is a member, the express terms of the Agreement provide that any dispute between the parties is to be decided in a judicial forum. In support of the latter ground, Plaintiff relies on the Forum Selection Clause which, as noted, states that New York state and federal courts have "exclusive jurisdiction" over disputes arising out of, or in connection with the Agreement. The court turns now to the merits of the motion, addressing first the issue of whether Plaintiff is bound as a FINRA member, and second, whether the Forum Selection Clause overrides the FINRA requirement to arbitrate disputes among members.

3

## DISCUSSION

I.    FINRA Membership and its Arbitration Rules

FINRA is a self-regulatory organization established under Section 15A of the Securities Exchange Act of 1934, with the authority to "exercise comprehensive oversight over 'all securities firms that do business with the public.'" UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc., 660 F.3d 643, 648 (2d Cir. 2011)(citations omitted). Members of FINRA agree to comply with the organization's rules, including its Code and arbitration provisions. Id.

The FINRA Code of Arbitration Procedure (the "FINRA Code") provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among... [m]embers..." FINRA Code §13200. Section 13100(o) of the FINRA code defines the term "member" to include any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled..." FINRA Code §13100(o).

It is clear that Biremis and Merrill Lynch were both FINRA members at the time of the Agreement. As such, the court holds that both parties are bound to adhere to FINRA's rules and regulations. In the absence of any agreement to the contrary, they are therefore bound to arbitrate any dispute arising out of their business relationship. The subsequent cancellation of Plaintiff's broker dealer status does not change the court's conclusion. FINRA Code§13100(o); see UBS Financial, 660 F.3d at 648; accord Newman v. First Montauk Financial Corp., 2010 WL 2933281 *4 (E.D.N.C. 2010)(noting that former FINRA members are bound to arbitrate business dispute at issue). Having established the application of the FINRA arbitration requirement to the parties,

4

the court turns to consider whether the Forum Selection Clause supercedes FINRA's dispute resolution provision.

II. The Federal Arbitration Act

A. General Principles

When considering the existence and application of an agreement to arbitrate, the court's analysis is guided by the principles of the Federal Arbitration Act (the "Act" or the "FAA"). The Act was enacted to promote enforcement of private agreements to arbitrate. See Paramedics Electromedicina Commercial, Ltd. V. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 653 (2d Cir. 2004); Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd., 189 F.3d 289, 294 (2d Cir. 1999); Infinity Indus., Inc. v. Rexall Sundown, Inc., 71 F. Supp.2d 168, 169 (E.D.N.Y. 1999). Section 3 of the FAA gives the court the power to stay the trial of the action pending completion of arbitration proceedings. 9 U.S.C. §3.

When determining whether to stay a judicial proceeding in favor of arbitration the court considers whether the dispute is arbitrable. That inquiry requires the court to address two questions: (1) whether the parties have agreed to arbitrate and if so, (2) whether the scope of the agreement to arbitrate encompasses the claims asserted. Chelsea Square Textiles, 189 F.3d at 294; North Ferry Co., Inc. v. Local 333, 338 F. Supp2d 430, 433 (E.D.N.Y. 2004). The FAA "does not require parties to arbitrate when they have not agreed to do so . . . ." Volt Info. Sciences v. Bd. of Trustees, 489 U.S. 468, 478 (1989). Instead, the Act "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Id.

5

With respect to the issue of whether there is an agreement to arbitrate, the Supreme Court has held that arbitration is "entirely a creature of contract." Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 104 (2d. Cir.2006). Thus, a party objecting to the existence of an arbitration agreement may raise the same objections available as when denying the existence of a contract. 9. U.S.C. § 2. Such matters are resolved pursuant to state contract law. Chelsea Square Textiles, 189 F.3d at 295-296. When applying state contract law, it is important to note that while there is a strong federal policy favoring arbitration, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983), "the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Applied Energetics, Inc. v. NewOak Capital Markets, LLC., 645 F.3d 522, 526 (2d Cir. 2011). Instead, the question as to whether an agreement has been reached is strictly a matter of contract interpretation. Chelsea Square Textiles, 189 F.3d at 295-296. As a general matter of such interpretation, "a subsequent contract regarding the same matter will supercede the prior contract." Applied Energetics, 645 F.3d at 526 (citations omitted).

In addition to general principles of contract interpretation, the court's decision here is informed by Second Circuit precedent deciding issues similar to those raised here. See Applied Energetics, Inc. v. NewOak Capital Markets, LLC., 645 F.3d 522, 526 (2d Cir. 2011); Bank Julius Baer & Co. v. Waxfield, Ltd., 424 F.3d 278, 281 (2d Cir. 2005). In both Applied Energetics and Bank Julius, the Second Circuit was faced with determining whether forum selection clauses superceded prior agreements to arbitrate. In Bank Julius, the earlier case, the court decided whether the parties' broad agreement to arbitrate was vitiated by later agreements, including a forum selection clause.

6

The clause at issue in Bank Julius, stated that:

> Without limiting the right of the Bank to bring any action or proceeding . . . in the courts of other jurisdictions, [defendant] hereby irrevocably submits to the jurisdiction of any New York State or Federal court sitting in New York City, and [defendant] hereby irrevocably agrees that any Action may be heard and determined in such New York State court or in such Federal court. [Defendant] hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction.

Bank Julius, 424 F.3d at 282. The agreement setting forth the forum selection language above also contained a merger clause stating that the "rights and remedies" therein were "cumulative and not exclusive of any rights or remedies provided under any other agreement or by law or in equity." Id.

Noting the inclusive nature of the merger clause, the Second Circuit rejected the notion that it nullified the prior agreement to arbitrate. Bank Julius, 424 F.3d at 283. Turning to the forum selection clause, the Bank Julius court held that, like the merger clause, it did not act to supercede the prior agreement to arbitrate. Interpreting the forum selection clause as addressing only the issue of personal jurisdiction in New York, the Second Circuit read the clause in harmony with the arbitration clause. Thus, the court stated that the forum selection clause could be interpreted to apply to actions falling outside of the agreement to arbitrate, including actions to enforce any arbitral award. Bank Julius, 424 F.3d at 284.

The court noted that an agreement to arbitrate remains in effect unless it can be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 284. The court further stated that it would not "nullify an arbitration clause unless the forum selection clause specifically precludes arbitration." Id., quoting, Personal

Sec. & Safety Systems v. Motorola, 297 F.3d 388, 396 n. 11 (5th Cir.2002). Based upon the foregoing analysis, the Second Circuit in Bank Julius denied the motion to stay arbitration.

The holding in Bank Julius was the subject of interpretation by the Second Circuit in the more recent case of Applied Energetics, Inc. v. NewOak Capital Markets, LLC., 645 F.3d 522, 526 (2d Cir. 2011). There, as here, the court was called upon to decide whether a FINRA arbitration could go forward despite a later agreement containing a forum selection clause. In Applied Energetics, the Second Circuit characterized Bank Julius as envisioning alternative scenarios involving the interpretation of an agreement to arbitrate along with a subsequent forum selection clause. The court acknowledged that in the Bank Julius scenario, the clauses at issue could be read as complementary, and the agreement to arbitrate was therefore properly enforced.

The "alternative" scenario stated by the Applied Energetics court to have been envisioned in Bank Julius, allows for contracting parties "to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration." Applied Energetics, 645 F.3d at 524-25. In such cases, the subsequent agreement is interpreted as contradictory, and not complementary, to the agreement to arbitrate. Id. Such was the scenario presented by the forum selection clause in Applied Energetics, which stated that:

> Any dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York.

Applied Energetics, 645 F.3d at 523 (emphasis added). Holding that the foregoing language voided the agreement to arbitrate, the Second Circuit described the Applied Energetics forum selection clause as in "direct conflict," with the earlier agreement to arbitrate. Specifically, the Second Circuit described the forum selection and arbitration clauses as "all inclusive,"

8

"mandatory," and stated that "neither admitted the possibility of the other." Applied Energetics, 645 F.3d at 525. The later, and more specific forum selection clause was therefore read alone, enforced as written and required that the Second Circuit reverse the district court's decision ordering arbitration. Id.

With the above referenced legal principles and case law in mind, the court turns to the issue of whether the FINRA agreement to arbitrate remains enforceable in light of the subsequent forum selection clause.

B. Disposition of The Motion

As with any issue of contract interpretation, the court begins with the language of the contracts at issue. The FINRA arbitration clause, as noted, applies to all disputes that arise out of the business activities of member. Other courts have characterized, as this court agrees, that the FINRA provision is a broad agreement to arbitrate. See, e.g., Louis Dreyfus Negoce, 252 F.3d at 225-26; Coca-Cola Bottling, 242 F.3d at 56; see also Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) ("all disputes…concerning or arising out of" an agreement plainly illustrates the parties' intent to submit issues of arbitrability to an arbitrator).

The forum selection clause in the Agreement is titled "Governing Law, Jurisdiction, and No Jury Trial," and states in pertinent part that:

> "This Agreement shall be governed by and construed in accordance with the laws of the State of New York, whose state and Federal courts shall have exclusive jurisdiction over any dispute arising out of or in connection with this Agreement…"

Agreement, Clause 10 (emphasis added).

The court notes also that the Agreement contains seemingly contradictory language concerning the effect of any prior agreements between the parties. Specifically, paragraph 1 of

9

the Agreement states that it "supplements any other agreement" between the parties, while paragraph 11 of the Agreement states that the Agreement "supercedes all prior agreements, written or oral, concerning the subject matter herein." It is worth noting that Merrill Lynch was the drafter of the Agreement. In the face of any ambiguity thereof, the Agreement must be construed against the drafter. Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 67 (2d Cir. 2000); Jacobson v. Sassower, 499 N.Y.S.2d 381, 382 (1985); Garcia v. American General Life Ins. Co. of New York, 695 N.Y.S.2d 420, 421 (2d Dept. 1999). For the reasons that follow, however, the court holds that neither of these conflicting paragraphs compels a particular result in this case and the court need not rely on the cited canon of contract construction. Instead, the language of the forum selection clause, which the court turns to discuss, is dispositive of the present matter.

The first phrase of the forum selection clause, pertaining to application of the laws of the State of New York can easily be read as complementary to the FINRA agreement to arbitrate. The court holds, however, that the remainder of the clause cannot. Instead, the language stating that the federal and state "shall have exclusive jurisdiction over any dispute arising out of or in connection with this Agreement," is of a mandatory nature and does not allow for the possibility of arbitration. Here, as in Applied Energetics, the court cannot simultaneously give effect to an arbitration agreement provision stating that "all disputes" are to be arbitrated along with a contractual provision granting "exclusive" jurisdiction over all disputes arising out of the parties' Agreement to and federal and state courts. Accordingly, the court must give effect to the language of the more recent forum selection clause as set forth in the Agreement. As in Applied Energetics, the court holds that the forum selection clause vitiates the parties' prior agreement to

arbitrate. The court therefore denies Defendant's motion to dismiss as well as the request to stay this action pending the FINRA arbitration.

## CONCLUSION

The parties' dispute is not subject to arbitration. The pending motion to dismiss and/or stay this action is hereby denied.

SO ORDERED.

s/ L. Wexler
_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       March 8, 2012

11