UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

BIREMIS, CORP.,

                                Plaintiff,        MEMORANDUM AND ORDER

             -against-                          No. CV-11-4934 (LDW)

MERRILL LYNCH, PIERCE, FENNER & SMITH    (Wexler, J.)
INCORPORATED,

                               Defendant.

----------------------------------------------------------------x

APPEARANCES:

    PLUMMER & PLUMMER, LLP
    BY: W. HUBERT PLUMMER
    Attorneys for Plaintiff
    77 Arkay Drive, Suite H
    Hauppauge, New York 11788

    LEVI LUBARSKY & FEIGENBAUM LLP
    BY: HOWARD B. LEVI &
    RICHARD F. LUBARSKY
    Attorneys for Defendant
    1185 Avenue of the Americas, 17th Floor
    New York, New York

WEXLER, District Judge

    Plaintiff, Biremis, Corp., ("Plaintiff" or "Biremis") and Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated, ("Defendant" or "Merrill Lynch") were parties to a now-terminated agreement pursuant to which Biremis contracted to have direct access and use of a trading system owned by Merrill Lynch. Biremis commenced this action seeking injunctive relief barring Merrill Lynch from prosecuting claims arising our of its agreement with Biremis in an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA"). Merrill

1

Lynch counterclaimed alleging its claims in this forum. Those counterclaims sought the relief Merrill Lynch initially sought by way of arbitration. In a Memorandum and Opinion dated March 8, 2012, this court held that the parties' dispute was not subject to arbitration. Presently before the court is Merrill Lynch's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. For the reasons set froth below, the motion is granted.

## BACKGROUND

### I. The Parties and the Agreement

Biremis is a Canadian Corporation. Its predecessor corporation, Biremis, LLC., was a Massachusetts corporation registered with the United States Securities and Exchange Commission ("SEC") and FINRA as a broker dealer. On July 14, 2011, Plaintiff's predecessor surrendered its corporate existence in the State of Massachusetts and ceased to do business as a U.S. broker dealer. Defendant, a Delaware corporation, is registered with the SEC as a broker-dealer, and is a member of FINRA.

Plaintiff and Defendant entered into an agreement dated March 16, 2007, (the "Agreement") pursuant to which Biremis agreed to pay for the direct access and use of Merrill Lynch's equity securities trading system (the "Trading System"). Under the terms of the Agreement, Biremis agreed to pay a fee to Merrill Lynch to use the Trading System to electronically transmit and execute trades of securities on behalf of Plaintiff's customers. The fee paid by Biremis to use the Trading System came in the form of "execution charges" which were agreed to be calculated based upon the number of shares traded and included, inter alia, stock exchange fees paid by Merrill Lynch in order to execute the requested trades. Pursuant to Biremis' standing instruction, all trades were to be executed via the New York Stock Exchange.

Biremis paid fees pursuant to the Agreement from its 2007 inception until February of 2011, when payment stopped. Merrill Lynch requested payment and when none was forthcoming, exercised its right to terminate the Agreement, upon written notice. After termination of the Agreement, Merrill Lynch continued to pursue payment from Biremis, seeking a total amount due of $1,029,477.91. Of that amount, $911,063.94, represented stock exchange fees paid by Merrill Lynch. In June of 2011, Biremis made a partial payment of $7,800 to Merrill Lynch, which reduced the amount currently alleged to be due to $1,021,677.91. That amount remains unpaid.

II.     Merrill's Causes of Action and Plaintiff's Defense

Merrill Lynch seeks to recover pursuant to claims for breach of contract and account stated. As to the former, Merrill seeks payment of the amount referred to above. Additionally, Merrill seeks, pursuant to the Agreement, costs and expenses including reasonable attorneys' fees. As to the claim for account stated, Merrill Lynch seeks payment pursuant to invoices sent to Biremis, which were never objected to, and pursuant to which Biremis made partial payment.

Upon receipt of Merrill Lynch's claims, Biremis replied with two counterclaims. The first is stated with respect to the pricing of execution fees, and the second refers to stock exchange fees. As to the first counterclaim, Biremis alleges that Merrill Lynch breached its obligation, under the terms of the Agreement, to provide Biremis with the "best execution pricing of trades." As to the second counterclaim, Biremis states that stock exchange fees invoiced to Biremis wrongfully exceeded certain preferential rates charged to Merrill Lynch as a "Supplemental Liquidity Provider."

III.    The Motion

Merrill Lynch moves for summary judgment on both its breach of contract and account stated causes of action. In support of the motion, Merrill Lynch argues that no question of fact exists as to the issues of whether it performed pursuant to the Agreement and whether the amounts asserted are owed.

Biremis does not dispute the existence of the Agreement or its use of the Merrill Lynch trading system. Seeking to avoid summary judgment, Biremis argues that the Agreement was breached by Merrill Lynch when it failed to charge Biremis: (1) the "best execution" rate, as required by allegedly applicable regulatory rules, and (2) Merrill Lynch's preferred stock exchange prices. After setting forth relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. <u>Legal Principles</u>

   A. <u>Summary Judgment</u>

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Reiseck v. Universal Commc'ns of Miami, Inc.</u>, 591 F.3d 101, 104 (2d Cir. 2010). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 219 (2d Cir.2004).

The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " BellSouth Telecomms.,

5

Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting, Research Automation Corp., 585 F.2d at 33.

B.    Breach of Contract

The elements of a claim for breach of contract are: (1) the existence of a contract (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach. RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC, 2005 WL 3076885 (2d Cir. 2005); First Investors Corp. Liberty Mut. Ins. Co., 152 F.3d 162 (2d Cir.1998); Bank of America v. Viders, 2010 WL 5452118 *3 (E.D.N.Y. 2010).

C.    Account Stated

A claim for account stated requires a showing that an account for amounts due was presented, accepted as correct, and that the debtor agreed to pay the amount. See National Economic Research Associates, Inc. v. Purolite C Corp., 2011 WL 856267 *2 (S.D.N.Y. 2011); IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp.2d 395, 411 (S.D.N.Y. 2009); see Interman Indus. Products, Ltd. v. R.S.M. Electron Power, Inc., 37 N.Y.2d 151, 154 (1975). (account stated claim is based upon agreed amount "so that the demand is essentially the same as if a promissory note had been given for the balance"). The third element, i.e., agreement to pay the amount, is separate from the original contract, and becomes a new agreement to pay reached between the parties. See Press Access LLC v. 1-800 Postcards, Inc., 2011 WL 6202887 *3 (S.D.N.Y. 2011).

Acceptance and agreement to pay depends on the facts presented. However, these elements "may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.'" National Economic

Research Associates, Inc., 2011 WL 856267 *3, quoting, Houbigant, 679 F. Supp.2d at 411; accord Interman Indus. Prods., 37 N.Y.2d at 154 (facts "may be such that, in the absence of an objection made within a reasonable time, an implied account stated may be found") (citation omitted).

II. Disposition of The Motion

   A. The Parties' Submissions

In support of its motion, Merrill Lynch has submitted the affidavit of Jonathan Werts ("Werts"), a Managing Director in the company's Global Execution Services business (the "Werts Affidavit"). Werts has personal knowledge of the Trading System and the Agreement. He describes the Trading System as one that allows third parties, such as Biremis, to electronically transmit orders and execute transactions for its customers in exchange for a fee paid to Merrill Lynch. Werts characterizes Biremis as a "Direct Market Access" ("DMA") customer. As such, Biremis had direct access to the Trading System, without the intervention of Merrill Lynch traders. Biremis trades were therefore never actually handled or executed by Merrill Lynch, but only via its Trading System.

The execution charges set forth in the Agreement provide for payment, over the term of the Agreement, in the amount of $0.24 or $0.25 per 100 shares traded as well as stock exchange fees. Stock exchange fees paid by Merrill Lynch and were, under the Agreement, to be reimbursed by Biremis. The Werts Affidavit also attests to the amounts due to Merrill Lynch and its attempts to collect those amounts as set forth above. Werts states that while Merrill Lynch was repeatedly assured that payment was forthcoming (without objection to the particular amount sought), no payment, other than the above referenced $7,800, was made on the Biremis account.

In support of this position, the Werts Affidavit includes copies of e-mail transmissions and letters between the parties wherein Biremis indicates that payment will be made. In e-mail transmissions made beginning on May 26, 2011, between a Merrill Lynch representative and Peter Beck ("Beck"), a Biremis officer, Merrill Lynch requests payment of amounts past due. Beck apologizes for the delay and states that he is "working on it." In early June, Beck again responds that he will check on the invoice. In a letters dated June 20 and 21, 2011, Merrill Lynch acknowledges Biremis' partial payment of $7,800, and again demands payment from Beck, stating that unless prompt payment is received legal action will be taken. In an e-mail dated June 23, 2011, Beck states that the termination of his company's right to use the Trading System has harmed its financial position. He states further his wish to resolve the matter amicably, and that he "will continue to estimate our free cash position on a monthly basis to see what amounts can be remitted" to Merrill Lynch. Significantly, while Beck's e-mails protest the termination of the Agreement, and state the dire financial position of Biremis, they contain no complaints regarding any amount charged. Thus, Beck makes no reference to improper execution or stock transaction fees, stating instead that the company is simply in no financial position to make payment on its obligation.

The Werts Affidavit also addresses directly the issue of its "best execution" obligations. As to any such obligation, Wert states that as a DMA user, Biremis executed trades directly, without the input of Merrill Lynch's traders. Its "best execution" obligations are therefore stated to have been satisfied when the Trading System operated properly to direct the Biremis orders to the trading markets it designated and executed those orders consistent with the terms and instructions provided by Biremis. The Werts interpretation of it best execution obligation is

supported by a FINRA rule that requires only that a company like Merrill Lynch process the order promptly and in accordance with the terms of the offer, and not that it make any best execution determination beyond that instruction. FINRA Rule 5310, Supplemental Material ¶.07 (stating that where there is a specific instruction to route a customer's order to a particular market for execution there is no best execution determination obligation beyond the customer's specific routing instruction).

Werts also addresses the claim that Merrill Lynch was required to charge stock exchange fees based upon its status as a "Supplemental Liquidity Provider" ("SLP"). Werts points out first that the Agreement contains no such provision. The Werts Affidavit states further that Merrill Lynch's status as an SLP has no application here because an SLP can trade in that capacity only for its own account, and not for the accounts of others.

For its part, Biremis submits the affidavit of Daniel Schlaepfer ("Schlaepfer"), a former Biremis officer (the "Schlaepfer Affidavit"). The Schlaepfer Affidavit states that "proprietary trading" is conducted by firms like Merrill Lynch, which trades are conducted in what is referred to as a "dark pool." In support of this statement, the Schlaepfer Affidavit annexes a June 2012 article from the online version of The Economist magazine. The article speaks in general terms, and makes no reference to the trading practices of Merrill Lynch, or practices associated with trades of those with DMA relationships with the company. Also annexed is an article from "thetradenews.com." That article makes reference to "MLXN," a "broker crossing network that combines a broad range of institutional clients, hedge funds, family offices, wealth management and broker/dealers from around the globe to provide neutral crossing opportunities." Like the first article annexed to the Schlaepfer Affidavit, this article provides no insight as to what

9

occurred with respect to Biremis trades executed pursuant to the Agreement. Finally, the Schlaepfer Affidavit annexes NASD Rule 2320 ("Rule 2320"), the predecessor best execution rule to FINRA Rule 5310. Schlaepfer alleges that exclusion of trades made by Biremis under the Agreement from the Merrill Lynch dark pool would be a material breach of Rule 2320. Neither the Schlaepfer Affidavit nor the Biremis Memorandum of Law submitted in opposition to the motion for summary judgment cite any evidence in support of the claim arising out stock exchange fees charged by virtue of Merrill Lynch's status as an SLP.

B. Defendant is Entitled to Summary Judgment

Upon review of the Agreement and the materials submitted by the parties, the court holds that Merrill Lynch is entitled to summary judgment on its claim for breach of contract. As to the first element of that claim – the existence of a contract – it is clear that the Agreement constitutes a contract between the parties. The court holds further that there is no question but that Merrill Lynch performed its obligations under the Agreement by allowing Biremis access to the Trading System and properly executed its trades.

Biremis' attempt to create any issue of fact as to Merrill Lynch's performance by raising its alleged failure to adhere to "best execution" practices fails. First, the citation to general articles about participation in so-called "dark pools" makes no connection to Merrill Lynch's performance under the Agreement and has no relevance to this matter. These articles can therefore not be relied upon to create an issue of fact as to Merrill Lynch's performance under the Agreement.

As to the terms of the Agreement, the parties agreed that execution fees would be set based upon volume of shares traded at the rates of $.024 or $.025 per 100 shares. Biremis admits

that Merrill Lynch was obligated, under a "standing instruction," to route all trades under the Agreement to the New York Stock Exchange. It is further clear that Biremis, after imposition of such an instruction: (1) agreed to a particular execution fee; (2) paid that fee for years and, (3) failed to raise any issue with respect to the fee until legal action was taken. It is disingenuous for Biremis to now take the position that Merrill Lynch breached the Agreement by failing to violate the specific instruction imposed by Biremis under the terms of the Agreement. Biremis cannot create an issue of fact as to Merrill Lynch's performance by taking the illogical position it now states, i.e., that Merrill Lynch could properly perform under the Agreement only by violating Biremis' specific standing instruction regarding trades executed under the Agreement. Nor has Biremis raised an issue of fact regarding Merrill Lynch's performance with respect to the imposition of stock exchange fees. As noted, Biremis makes no real attempt to support this position in either its Memorandum of Law or the affidavit submitted in opposition to the motion.

For the foregoing reasons, the court holds that Biremis' reference to any violation of a best execution rule or imposition of stock exchange fees fails to defeat Merrill Lynch's claim that it performed according to the terms of the Agreement.

Turning to the next element of a breach of contract claim, there is no question but that Biremis failed to perform its obligation under the Agreement. The Agreement required payment of for the use of the Merrill Lynch system. Such fees were billed, and as shown by invoices and admitted by Biremis, were not paid. Damages are stated clearly in the amount claimed on Merrill Lynch invoices.

Having found no issue of fact as to Merrill Lynch's breach of contract claim, the court holds that Merrill Lynch is entitled to summary judgment. In light of the fact that the broader

breach of contract summary judgment claim is granted, it is not necessary for the court to consider the narrower claim of an account stated.

## CONCLUSION

Defendant's motion for summary judgment is granted. Defendant is directed to submit an appropriate judgment on notice within three weeks of the date of this order. The Clerk of the Court is directed to terminate the motion appearing as docket entry number 27 and to thereafter close the file in this case.

SO ORDERED.

/s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
September 10, 2012